IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3113-FL

| DANIEL L. ALLEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| R. DAVID MITCHELL, TIMOTHY J. | ) | |
| MCKOY, KEVIN A. BARNES, | ) | |
| LARRY M. DUNSTON, SHELTON E. | ) | |
| ROGERS, JUANITA R. JAMES, | ) | |
| MARANDA C. MIMS, and COLBERT | ) | |
| L. RESPASS[1], | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 66) pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed and the issues raised are ripe for decision. For the reasons that follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing a complaint on May 13, 2016, pursuant to 42 U.S.C. § 1983. Plaintiff alleges his rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated because there was insufficient evidence to support his disciplinary hearing convictions and validation as a gang member. On February 17, 2017, plaintiff filed a motion for injunctive relief.

---

[1] On December 19, 2017, the court dismissed plaintiff's claims against formerly-named defendants Frank L. Perry, Robert D. Fountain, Terry J. Lemon, Jerry L. Crawford, Christopher B. Rich, and George T. Solomon.

On May 4, 2017, plaintiff filed a motion for appointment of counsel. On May 17, 2017, the court denied plaintiff's motions for injunctive relief and for appointment of counsel, conducted its frivolity review of the complaint, and directed plaintiff to file an amended complaint particularizing his claims.

Plaintiff filed an amended complaint on June 20, 2017. On December 19, 2017, the court conducted its frivolity review of the amended complaint and allowed the action to proceed as to plaintiff's claims against defendants R. David Mitchell, Timothy J. McKoy, Kevin A. Barnes, Larry M. Dunston, Shelton E. Rogers, Juanita R. James, Maranda C. Mims, and Colbert L. Respass.

On January 23, 2018, plaintiff filed a second motion for appointment of counsel and motion for injunctive relief. On August 3, 2018, the court denied plaintiff's motions. On August 6, 2018, the court entered a case management order governing discovery and pretrial dispositive motions practice, and also appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to represent plaintiff for the discovery phase of the case.

On August 20, 2018, plaintiff filed a motion for leave to amend the complaint. On November 1, 2018, plaintiff filed a second motion for leave to amend the complaint, proposed sealed exhibits, and a motion to seal. On December 17, 2018, plaintiff filed a motion for extension of time to complete discovery. On December 20, 2018, the court granted plaintiff's motion for extension of time to complete discovery, but denied his motions for leave to amend and to seal. On March 13, 2019, defendants filed a second motion for extension of time to complete discovery. On March 14, 2019, the court granted defendants' motion for extension of time to complete discovery.

The parties completed discovery on or about May 13, 2019. On the same date, NCPLS notified the court of its opinion that further appointment of counsel is not necessary in this action. The next day, the court terminated NCPLS as counsel for plaintiff. On June 6, 2019, plaintiff filed a motion for additional discovery. On June 20, 2019, the court denied plaintiff's motion for additional discovery. On June 14, 2019, defendants filed a motion for extension of time to file dispositive motions. On June 18, 2019, the court granted defendants' motion for extension of time to file dispositive motions.

On June 21, 2019, defendants filed the instant motion for summary judgment. In support, defendants rely upon memorandum of law, statement of material facts, and the following: 1) affidavit of Karen Pardue and attached exhibits of plaintiff's 2008 discipline records and 2010 discipline summary; and 2) affidavit of Christopher Rich and attached exhibit of plaintiff's infraction history.

On June 24, 2019, pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), the court provided plaintiff notice of his right to respond to defendants' motion. On June 28, 2019, plaintiff filed a response opposing defendants' motion. On July 1, 2019, plaintiff filed a motion for extension of time to file a more particularized response. On the same date, the court granted plaintiff's motion for extension of time. On July 15, 2019, plaintiff filed a motion for photo evidence. On August 8, 2019, the court denied plaintiff's motion. On July 23, 2019, plaintiff filed an amended response, which relies upon memorandum of law, statement of material facts, and appendix. Plaintiff's appendix included the following: 1) affidavits of inmates Malcolm Williams and Jamel S. McGhee; 2) drawing and internet history of the African Crown; 3) letters and gang history information; 4) excerpts from the North Carolina Department of Public Safety's ("NCDPS") policies and procedures for offender disciplinary procedures and use of mail; 5)

plaintiff's administrative remedy procedure; and 6) comments from the investigating officer of plaintiff's disciplinary infraction in 2010.

On August 6, 2019, defendants replied in opposition and included a photograph of plaintiff's tattoo. On October 28, 2019, plaintiff filed an affidavit of inmate Bilal Rasul. On November 4, 2019, plaintiff filed an affidavit of inmate Jodie L. Steele, II. On November 26, 2019, plaintiff filed an affidavit of inmate Timothy D. Reels, Jr.

## STATEMENT OF THE FACTS

As defendants move for summary judgment, the court recounts the facts in the light most favorable to plaintiff.

A.  2008 Disciplinary Hearing

On June 12, 2008, defendant Barnes, a correctional captain, conducted a routine search of plaintiff's personal property. (Def.'s Stmt. of Material Facts ("Def.'s SOMF") (DE 68) ¶ 1; Pardue Ex. A (DE 69-2) at 13).[2] The parties dispute what defendant Barnes found. According to defendants' version of events, defendant Barnes found Security Risk Group ("SRG") literature and materials related to the United Blood Nation ("UBN") and correspondence to plaintiff from known UBN members. (Id.) According to plaintiff's version of events, the literature found contained information on many different gangs, not just the UBN. (Pl.'s Stmt. of Material Facts ("Pl.'s SOMF") (DE 78) ¶ 1).

As a result of the materials found on June 12, 2008, plaintiff was charged with a violation of disciplinary offense A14 – to participate in, or organize, whether individually or in concert with others, any gang or SRG, or participate in any activity or behavior associated with a SRG. (Def.'s

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to the page numbering, if any, specified on the face of the underlying document.

SOMF ¶ 3; Pardue Ex. A at 2; Pl.'s SOMF ¶ 3; Pl.'s Ex. C (80-5) 2). Plaintiff was provided with notice of his rights during the disciplinary process but refused to sign the notice. (Def.'s SOMF ¶ 4; Pardue Ex. A at 12; Pl.'s SOMF ¶ 4). Plaintiff was also given the opportunity to submit a written statement in his defense. (Def.'s SOMF ¶ 5; Pardue Ex. A at 20; Pl.'s SOMF ¶ 5). In his written statement, plaintiff admitted "many people send [him] a lot of things related to black history, gangs, cults, religions, etc." (Pardue Ex. A at 20). Plaintiff also stated, "People write me I do not even know… some I ask about certain things and the information is forwarded to me via the mail." (Id.) Plaintiff also denied being "in any kind of gang." (Id.)

On July 9, 2008, plaintiff's disciplinary hearing was held at Franklin Correctional Center before defendant Respass, the disciplinary hearing officer. (Pardue Ex. A at 5). At the hearing, defendant Respass explained plaintiff's summary of charges and appeal rights. (Def.'s SOMF ¶ 6; Pardue Ex. A at 5; Pl.'s SOMF ¶ 6). Plaintiff pleaded not guilty. (Def.'s SOMF ¶ 7; Pardue Ex. A at 5; Pl.'s SOMF ¶ 7). Defendant Respass considered the SRG materials and statements from plaintiff and defendant Barnes. (Def.'s SOMF ¶ 2, 8; Pardue Ex. A at 5, 14-19; Pl.'s SOMF ¶ 2, 8). Defendant Respass found plaintiff guilty of the A14 charge. (Id.) Plaintiff was punished to sixty days in segregation, forty days loss of credit time, fifty hours of extra duty, and suspension of privileges including canteen, telephone, and recreation. (Pardue Ex. A at 6). Plaintiff was given a copy of his appeal rights, a record of the hearing, and his punishment. (Def.'s SOMF ¶ 9; Pardue Ex. A at 5; Pl.'s SOMF ¶ 9). Plaintiff appealed the decision. (Def.'s SOMF ¶ 10; Pardue Ex. A at 3-4; Pl.'s SOMF ¶ 10). On July 21, 2008, plaintiff's appeal was upheld. (Def.'s SOMF ¶ 11; Pardue Ex. A at 2; Pl.'s SOMF ¶ 11).

B.     2010 Disciplinary Hearing

On May 6, 2010, officers conducted a search of plaintiff's locker at Nash Correctional Institution. (Def.'s SOMF ¶ 22; Pardue Ex. B at 3-4; Pl.'s SOMF ¶ 22). According to defendants' version of events, the officers found a gang related picture and several letters that contained gang terminology and codes that were determined to be associated with UBN. (Def.'s SOMF ¶ 23; Pardue Ex. B at 3-4). According to plaintiff's version of events, none of the materials found were gang related. (Pl.'s SOMF ¶ 23). Plaintiff was again charged with a violation of disciplinary offense A14 for involvement with a gang or gang activity. (Def.'s SOMF ¶ 23; Pardue Ex. B at 3-4). Plaintiff was provided notice of his rights and submitted a written statement denying he was a gang member. (Def.'s SOMF ¶ 24-25; Pardue Ex. B at 3; Pl.'s SOMF ¶ 24-25). The investigating officer recommended that plaintiff be counselled and the A14 charge be dismissed. (Def.'s SOMF ¶ 26; Pardue Ex. B at 3; Pl.'s SOMF ¶ 26). On May 20, 2010, plaintiff's disciplinary hearing was held at Nash Correctional Institution. (Pardue Ex. B at 3). The disciplinary hearing officer explained the discipline hearing process and plaintiff's rights. (Def.'s SOMF ¶ 28; Pardue Ex. B at 4; Pl.'s SOMF ¶ 28). Plaintiff "pled guilty to the A-14 offense." (Pardue Ex. B at 4). According to plaintiff's version of events, he "pleaded guilty to having the letter that was given to him through the mail system of the prison." (Pl.'s SOMF ¶ 29). Plaintiff was punished to forty-five days in segregation, thirty days loss of credit time, forty hours of extra duty, and suspension of privileges including telephone and radio. (Pardue Ex. B at 3). Plaintiff did not appeal the decision. (Def.'s SOMF ¶ 29).

C.  Validation as a SRG Member

Pursuant to NCDPS policies and procedures, an inmate is validated as a SRG member after investigators complete a validation report and submit it to the Special Operations and Intelligence Unit for final review. (Def.'s SOMF ¶ 13; Rich Aff. ¶ 7.) "The validation report combines all

evidence related to an inmate's SRG activities, assigns that evidence to different categories with weighted points depending on the nature of the evidence, adds the points together, and if the point total crosses a specific threshold, the inmate is either found to not be a member of the SRG, found to be an associate of the SRG, or found to be a SRG member and assigned to either Level One, Level Two, or Level Three, depending on numerous other factors." (Rich Aff. ¶ 8). If an inmate is validated as an SRG member, they are reviewed annually by the Special Operations and Intelligence Unit. (Def.'s SOMF ¶ 19; Rich Aff. ¶ 11). The inmate is never informed that an annual review is taking place or the results of the review for security reasons as it relates to gangs and gang activity within NCDPS facilities. (Def.'s SOMF ¶ 20; Rich Aff. ¶ 11).

NCDPS created the Security Threat Group Management Unit program to target high level SRG members and provide them with tools to encourage a lifestyle free of gang involvement. (Def.'s SOMF ¶ 30; Rich Aff. ¶ 12). Inmates who successfully complete the program can have their SRG level reduced, privileges such as family visitation restored, and become eligible for minimum custody. (Id.) Under NCDPS's current policies and procedures, the SRG membership is never removed from an inmate. (Def.'s SOMF ¶ 31; Rich Aff. ¶ 13). NCDPS is developing a new policy which will allow the SRG membership to be removed from inmate records. (Def.'s SOMF ¶ 32; Rich Aff. ¶ 13). "Being validated as an SRG member does not affect an inmate's release date. It only affects the inmate's custody classification if they are considered a Level Three SRG member. Only the inmate's behavior or findings of guilt resulting in infractions result in changes to an inmates release date." (Rich Aff. ¶ 14).

As a result of the materials found during the search of plaintiff's personal property on June 12, 2008, defendants Barnes and Rogers investigated plaintiff to determine whether he was a gang member. (Def.'s SOMF ¶ 12, 18; Rich Aff. ¶ 6, 10; Pl.'s SOMF ¶ 12, 18). The validation report

submitted to the Special Operations and Intelligence Unit stated that "(1) staff at Franklin CI received intelligence through a confidential informant that [plaintiff] was a member of UBN; (2) [plaintiff] has a tattoo on his upper arm of a five pointed crown which is a symbol known to be used by UBN members to display their membership in the group; (3) [plaintiff] was observed by staff associating with validated members of UBN; (4) [plaintiff] was in possession [of] UBN literature detailing the history of the organization and letters from other persons discussing UBN members or activities." (Rich Aff. ¶ 9). According to plaintiff, the statement from the confidential informant was not part of the record, the tattoo on his arm is an "African Crown" and has nothing to do with a gang, his association with other inmates did not prove he was a gang member, and the literature he was in possession of discussed multiple gangs. (Pl.'s SOMF ¶ 15). The validation report was reviewed and finalized by defendant Dunston, the STG Coordinator at the Special Operations and Intelligence Unit. (Def.'s SOMF ¶ 18; Rich Aff. ¶ 10; Pl.'s SOMF ¶ 18). Plaintiff was validated as a UBN member at Level One and has been reviewed annually since 2008 by staff in the Special Operations and Intelligence Unit. (Def.'s SOMF ¶ 17, 21; Rich Aff. ¶ 10-11).

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must

then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of

more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

   1.   Disciplinary Hearings

Plaintiff alleges that his disciplinary hearings and convictions violated his rights under the Due Process Clause of the Fourteenth Amendment because there was insufficient evidence of gang involvement presented at his disciplinary hearings. (Am. Compl. (DE 11) 6). The Supreme Court has outlined certain procedural safeguards for prison disciplinary hearings. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Under Wolff, an inmate is entitled to the following: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a written statement by the factfinders as to the evidence relied on and the reasons for disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. See id. at 563–68; see also Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019).

In addition to these procedural safeguards, "some evidence in the record" must support a finding revoking a prisoner's good-time credit. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454–55 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [decisionmaker]." Id. at 455–56; Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). The "some evidence" standard is a highly deferential standard of review. See, e.g., Hill, 472 U.S. at 455–56.

Plaintiff principally challenges the sufficiency of the evidence. The court finds that there is some evidence in the record to support plaintiff's disciplinary convictions for involvement with a gang or gang activity. As to plaintiff's 2008 disciplinary hearing, defendant Barnes submitted a written statement that he found some SRG literature and materials related to the UBN and correspondence to plaintiff from known UBN members. Plaintiff also admitted many people send him letters related to gang history and the literature he possessed contained information on many different gangs. The DHO reviewed and considered the witness statements offered by plaintiff and defendant Barnes, along with the SRG materials found. As to plaintiff's 2010 disciplinary hearing, the investigating officer stated that during a search of plaintiff's locker officers discovered a gang related picture and several letters that contained gang terminology and codes that were determined to be associated with UBN. Plaintiff submitted a written statement denying the materials found were gang related, but then pleaded guilty at the hearing and did not appeal his conviction. Plaintiff asserts none of the materials found were gang related and that the evidence used against him was fabricated. As set forth above, however, this court cannot weigh the evidence or make credibility determinations when reviewing the sufficiency of the evidence presented to the DHO. See Walpole, 472 U.S. at 455-56. The DHO's decision to credit the officer's statements over plaintiff's is sufficient to satisfy the some evidence standard in these circumstances. See Baker, 904 F.2d at 932-33.

As to the procedural safeguards mandated by Wolff, the record reflects that prison officials provided written notice of the charges and a written statement by the factfinders. In his response brief, plaintiff asserts he was afforded no witnesses in violation of his rights. See (DE 79) 3; Wolff, 418 U.S. at 564-66; Lennear, 937 F.3d at 268. To the extent this claim is properly before

the court,[3] it lacks merit. Procedural due process violations in prison disciplinary proceedings are subject to harmless error review. Lennear, 937 F.3d at 277; Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003). Thus, "in evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." Lennear, 937 F.3d at 277; see also Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006). Plaintiff's response brief does not explain who he would have called as a witness or how the testimony would have aided his defense. Accordingly, plaintiff fails to state a due process claim based on his disciplinary hearing convictions and the court grants defendants' motion for summary judgment as to this claim.

2. Validation

Plaintiff alleges that his validation as a SRG member violated his rights under the Due Process Clause of the Fourteenth Amendment because there was insufficient evidence to support a finding that he was a SRG member. (Am. Compl. (DE 11) 6-11). Specifically, plaintiff contends the evidence was fabricated and he should not have received points for his crown tattoo. (Id. at 8-9). Plaintiff also contends he was never advised as to the policies for validation and his validation status has never been reviewed. (Id. at 7). Plaintiff alleges as a result of his validation, he lost good time credit, visitation privileges, and minimum custody promotion. (Id. at 11). Plaintiff seeks removal of his validation and reinstatement of all privileges. (Id. at 12).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

---

[3] Generally, a party may not raise new claims in response to a motion for summary judgment without amending the complaint. See Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009). In light of plaintiff's pro se status, and in the interest of justice, the court will consider the claim.

"Although lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a prisoner's right to liberty does not entirely disappear." Incumaa v. Stirling, 791 F.3d 517, 526 (4th Cir. 2015) (internal alteration, citation, and quotation omitted), as amended (July 7, 2015). "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "Liberty interests which are protected by the Due Process Clause . . . will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal quotations omitted); see Incumaa, 791 F.3d at 526–27; Prieto, 780 F.3d at 248.

Here, plaintiff fails to identify a protected liberty interest. Plaintiff's designation as a SRG member is nothing more than a security classification and prisoners do not possess a protected liberty interest in a specific custody classification. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 221–22 (2005); O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991). Moreover, plaintiff does not allege any facts showing an atypical and significant hardship in relation to the ordinary incidents of prison life. As for plaintiff's loss of visitation and other privileges, "the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); see also Joyner v. Ozmint, No. 3:09-cv-DCNJRM, 2010 WL 3783167, at *4 (D.S.C. Sept. 22, 2010) (finding that loss of canteen, visitation, and phone privileges do not implicate the Due Process clause of the Fourteenth Amendment), aff'd, 425 F. App'x 223 (4th Cir. 2011). As for plaintiff's loss of good time credit, the record shows an inmate's behavior and disciplinary infractions, not an inmate's SRG status, affects his release date. See Rich Aff. ¶ 14. Plaintiff's loss of good time credit is

based on his own behavior and disciplinary infractions.[4]  Accordingly, plaintiff has not alleged a deprivation of life, liberty, or property by governmental action.

Even if plaintiff could prove a deprivation of life, liberty, or property, the record shows NCDPS has an extensive process that it follows to validate an inmate as a SRG member and they regularly review validation statuses.  See Rich Aff. ¶ 7-8, 11-14.  As for plaintiff's validation, the record shows defendants complied with the SRG validation process.  Plaintiff was investigated and a validation report was forwarded to the Special Operations and Intelligence Unit where it was reviewed and finalized.  Id. at ¶ 9-11.  As for plaintiff's claim that his validation status has never been reviewed, the record shows plaintiff has been reviewed annually since he was validated in 2008 and reviews are never disclosed to inmates for security concerns.  Id. at ¶ 11.  As for plaintiff's request to have his SRG validation removed from his records, the record shows NCDPS is in the final stages of developing a new policy which will allow for the renunciation of SRG membership by SRG validated inmates.  Id. at ¶ 13.  Accordingly, plaintiff fails to state a due process claim based on his SRG classification and the court grants defendants' motion for summary judgment as to this claim.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 66) is GRANTED, and plaintiff's claims are DISMISSED.  The clerk of court is DIRECTED to close

---

[4] Plaintiff has committed a total of thirty-three infractions since he has been incarcerated, and eleven of those infractions were committed after he was validated as a SRG member in 2008.  See Def.'s SOMF ¶ 35; Rich Ex. C.

this case.

SO ORDERED, this the 19th day of March, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge